RECEIVED
IN ALEXANDRIA, LA
JUL - 7 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| RODNEY CHATMAN<br>D.O.C.#129353 | DOCKET NO. 08-cv-1056; SEC. P |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| CORRECTIONS CORPORATION OF<br>AMERICA, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed by Plaintiff Rodney Chatman (D.O.C. #129353), pro se and in forma pauperis, on July 16, 2008. Chatman is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC) and is housed at Winn Correctional Center (WCC) in Winnfield, Louisiana.

In his original complaint, Plaintiff sought only injunctive and declaratory relief as well as class certification; he listed seven other inmates as Plaintiffs, each of whom has filed his own action in this district. The plaintiff alleges numerous violations by the defendants of the constitutional rights of WCC inmates.

This matter has been referred to the undersigned for review, report, and recommendation pursuant to 28 U.S.C. § 626 and a standing order of this Court.

### FACTS ALLEGED

Chatman is the only named Plaintiff in this case, although seven other WCC inmates contemporaneously filed identical

complaints in this District Court.¹ The complaint filed by Chatman, Guidry, McDowell, Lott, Ford, Aucoin, Robbins, and Haley is virtually identical to the complaint previously filed by WCC Inmates Michael Sampson, Bobby Young, Ralph Sweat, Oscar James, Benjamin Wright, Chester Matthews, Stephen McGill, and Walter Houston.² The "new group" of plaintiffs, including Chatman, took the typed complaint of the inmates listed above, erased the names of the eight previous plaintiffs, and wrote in their own names by hand.

Named as defendants are: Corrections Corporation of America (CCA), Warden Tim Wilkinson, Deputy Warden Tim Morgan, Deputy Warden Angel A. Martin, Chief of Security Virgil Lucas, Governor Bobby Jindal, and LDOC Secretary James LeBlanc. In the original complaint, Plaintiff claimed that overcrowding at WCC and certain policies and procedures of LDOC and CCA have led to the violation of his constitutional rights, as well as the rights of other inmates at WCC.

**A.  ORIGINAL COMPLAINT**

In the complaint, it is alleged that overcrowding at WCC and certain policies and procedures of LDOC and CCA have led to the

---

¹The other Plaintiffs listed on the Complaint are Pat A. Guidry (the "lead Plaintiff"), Isaac McDowell, Edwin Lott, George Ford, Todd Aucoin, Paul Ray Robbins, and Hernando C. Haley.

²Docket numbers 08-915, 08-916, 08-917, 08-918, 08-920, 08-921, 08-923, and 08-924, respectively.

2

violation of Plaintiff's constitutional rights, as well as the rights of other inmates at WCC through:

1. excessive, malicious and sadistic use of force by staff;
2. the use of chemicals such as tear gas and pepper spray to punish or threaten inmates, sometimes administered to an entire dormitory; then, a lack of medical treatment afterward;
3. four and five point hand restraints used for mentally ill inmates and without cause and without proper monitoring;
4. inmates placed in isolation for arbitrary reasons and not properly monitored;
5. inmates exposed to unreasonable risks of harm by other inmates due to inadequate staffing and unsupervised or improperly trained guards;
6. ignoring a known practice of "kicking out" where larger inmates force younger or more fragile inmates to give up food or personal belongings under threats of violence;
7. placing "hits" on certain inmates and "hiring" other inmates to beat up or intimidate them;
8. abusive and arbitrary disciplinary practices;
9. failing to conduct disciplinary hearings;
10. failing to investigate complaints of abuse by guards and thwarting inmates' efforts at contacting PZT (project zero tolerance);
11. failing to provide adequate mental health care;
12. failing to provide adequate physical health care, including vision, hearing, dental, and substance abuse treatment;
13. lack of programs, recreational items, or activities to occupy inmates;
14. lack of nutritional meals;
15. failing to give inmates privacy in the bathrooms;
16. failing to provide sufficient clothing, shoes, and linens;
17. inadequate access to the courts; and
18. retaliation against inmates who try to access the courts.

Of the above allegations, Chatman initially claimed that he was *personally* subjected to: "excessive force by staff; abusive and arbitrary punishment; inadequate mental health care; lack of substance abuse [counseling]; lack of security and control."[3] [Doc.

---

[3] Chatman's name is hand-written in a blank on paragraph 15, page 7 of Document #1-4. In the original complaint filed by the first group of inmates, the specific allegations in paragraph 16

#1-4, p.7]

## B. AMENDED COMPLAINT

Because the complaint provided only general and conclusory allegations (which were identical to those of Inmate McGill in a prior lawsuit), the Court ordered Plaintiff to amend the complaint and allege facts to support the conclusion that **his** constitutional rights were violated. Plaintiff submitted an amended complaint stating that he wished to dismiss claims 1, 2, 3, 4, 6, 7, 8, 9, 10, 13, and 14, as enumerated above.

Therefore, Plaintiff's only remaining claims involve conditions of confinement including exposure to an unreasonable risk of harm by other inmates due to inadequate staffing and unsupervised or improperly trained guards; failing to provide him with adequate mental and physical health care; failing to give Plaintiff privacy in the bathrooms; failing to provide sufficient clothing, shoes, and linens; inadequate access to the courts; and retaliation against him for exercising his right to access the courts.

## LAW AND ANALYSIS

First, to obtain a preliminary injunction a Plaintiff must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened

---

were attributed to Inmate Steven McGill. 1:08-cv-0923.

injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. See Planned Parenthood of Houston & Southeast Texas v. Sanchez, 403 F.3d 324, 329 (5th Cir. 2005).[4] Also, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); see also Sias v. Louisiana 146 Fed. Appx. 719 (5th Cir. 2005)("Sias's allegations are vague and conclusory and are therefore insufficient to establish a 42 U.S.C. §1983 claim.") (citations omitted); Elliott v. Perez, 751 F.2d 1472, 1479 (5th Cir. 1985)(A plaintiff may not plead merely conclusory allegations to successfully state a section 1983 claim, but must instead set forth specific facts which, if proven, would warrant the relief sought. (citations omitted)).

### 1. Inadequate Staff

Plaintiff complains that there are too many female guards working on the tiers at WCC. Specifically, on March 14, 15, 21, and 22, 2009, there were two female guards working "on the floor" and one female guard working "in the cage." [Doc. #5, p.2] Plaintiff complains that, with forty-two inmates on his tier, he

---

[4]For a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. See Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 847 (5th Cir. 2004)(citations omitted).

could have been attacked; and, if he had been attacked, there would have been "no muscles, no male guard" to try and stop the fight. Plaintiff claims that, at all times, there should be at least one male guard working in every unit.

First, Plaintiff provides no facts indicating that he was ever attacked or threatened with violence by any inmate, or that he reported any such threat to WCC officials. Under the Eighth Amendment, prisoners have a right to be protected from violence at the hands of other prisoners. See Farmer v. Brennan, 511 U.S. 825 (1994). However, the Eighth Amendment mandates 'reasonable' safety, not 'absolute' safety. See Newton v. Black, 133 F.3d 301, 307 (5th Cir. 1998). A prison official can only be held liable if he deliberately ignored a clear danger to a prisoner after the official had been made aware of the danger. Farmer, 511 U.S. at 837. A prisoner's vague fears of being attacked are not sufficient notice to inform prison officials under this standard. See Babcock v. White, 102 F.3d 267, 271-72 (7th Cir. 1996); McKnight v. Livingston, 2007 U.S. Dist. LEXIS 5313 (D. Tex. 2007). Plaintiff has not alleged facts indicating that the defendants deliberately ignored a clear danger to his safety after being made aware of the danger. While Plaintiff believes the female guards cannot protect him, he has apparently remained safe to date. Based on the facts alleged, Plaintiff cannot show that he will suffer irreparable injury if an injunction is not granted. Moreover, federal courts

are not prison managers and, ordinarily, courts accord great deference to the internal administrative decisions of prison officials. See Royal v. Clark, 447 F.2d 501 (5th Cir. 1971); Krist v. Smith, 439 F.2d 146 (5th Cir. 1971); Haggerty v. Wainwright, 427 F.2d 1137 (5th Cir. 1970). In fact, the Supreme Court has continuously cautioned federal courts from assuming "a greater role in decisions affecting prison administration." Shaw v. Murphy, 532 U.S. 223, 230 (2001); accord Washington v. Harper, 494 U.S. 210, 223-24 (1990); Turner v. Safley, 482 U.S. 78, 84-85 (1987). Finally, it would be against the public interest to issue an injunction requiring the prison to employ additional male guards based solely on Plaintiff's disagreement with the administration of the prison.

### 2. Health Care

Plaintiff complains that he is not receiving adequate mental and physical health care.

#### a. Mental Health

Plaintiff does not allege that he was ever denied mental health care; in fact, he plainly states that he has *not* requested mental health care. [Doc. #5, p.4] He states that WCC should have a policy like Louisiana State Penitentiary whereby all inmates are placed on a call-out to see the mental health department every ninety days. However, as discussed above, federal courts are not prison managers, and should not assume a greater role in decisions

affecting prison administration. Shaw v. Murphy, 532 U.S. 223, 230 (2001); Royal v. Clark, 447 F.2d 501 (5th Cir. 1971). Moreover, Plaintiff has simply not alleged a constitutional violation of his right to mental health care. He has not presented any facts indicating that he ever sought and was denied treatment; therefore, he cannot establish deliberate indifference or entitlement to injunctive relief. This claim is frivolous.

b. Physical Medical Care

Plaintiff alleges that, on December 16, 2007, he went to the Huey P. Long hospital due to a skin infection around his eyes. The hospital physician referred Plaintiff to the LSU hospital in Shreveport. Plaintiff waited several months, but he was never transported to LSU hospital. He sent requests concerning the referral, and according to Plaintiff, the response stated "that it was being taken care of." [Doc. #5, p.5] After another six months, Plaintiff sent another request to Pat Thomas. Nurse Richardson replied that she was sorry for the delay, and that Plaintiff's request had been resubmitted. He was transported to LSU Shreveport within two months of Nurse Richardson re-submitting his request. Plaintiff claims that the delay could have caused him serious damage around his eyes. Plaintiff does not state what injunctive relief he is seeking in this regard. While he requested a trip to LSU hospital in Shreveport, he ultimately was transported there for an appointment. Thus, Plaintiff's request is moot.

Moreover, Plaintiff has not presented facts of deliberate indifference, which can be manifested by prison officials in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle v. Gamble, 429 U.S. 97, 104-5 (1976) (footnotes and internal quotation marks omitted)); see also Helling v. McKinney, 509 U.S. 25, 35-37 (1993). Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm. Thompson v. Upshur County, 245 F.3d 447, 459 (5th Cir. 2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). Plaintiff's delay in being transported to LSU hospital for non-emergency treatment presents a claim of negligence, at best, which is not sufficient to state a claim under Section 1983.

Next, Plaintiff complains that, when he arrived at LSU hospital, he was informed that his blood pressure was elevated. The doctor recommended that Plaintiff's blood pressure be monitored once a week at WCC. Plaintiff complains that over a month has gone by, and the medical department has not placed him on a call-out list to have him report to the infirmary to check his blood pressure. Again, Plaintiff does not allege that he requested and

9

was denied medical care. Rather, he complains that WCC has not taken the initiative to summon him to the infirmary for blood pressure monitoring. If Plaintiff fells ill or believes that he is in need of medical care, he can and should make a sick call and seek treatment. Plaintiff has not alleged a constitutional violation. Therefore, he cannot show that he faces a substantial threat of irreparable injury without the granting of an injunction.

### 3. Bathrooms and Female Guards

Plaintiff complains that female guards can see inmates while they are showering or using the toilet/urinal. He alleges that on March 31, 2009, a female security guard made a comment to Plaintiff while he was using the toilet. Plaintiff states that the remark caused him to feel embarrassed and uncomfortable. Plaintiff claims that society would not tolerate this misconduct.

Plaintiff does not assert the violation of a particular constitutional right. Prisoners retain at best a very minimal Fourth Amendment interest in privacy after incarceration. Hudson v. Palmer, 468 U.S. 517, 527 (1984). The Fifth Circuit and other courts have upheld the use of female guards in areas that gave them view of unclothed male inmates. See Barnett v. Collins, 940 F.2d 1530 (5th Cir.1991)(table)(unpublished)(upholding use of female guards in guard towers giving full view of male inmates taking showers); Johnson v. Phelan, 69 F.3d 144, 147 (7th Cir. 1995)("If only men can monitor showers, then female guards are less useful to

the prison; if female guards can't perform this task, the prison must have more guards on hand to cover for them."); Timm v. Gunter, 917 F.2d 1093, 1101-02 (8th Cir. 1990)(explaining that constant visual surveillance by guards of both sexes is a reasonable and necessary measure to promote inmate security); Michenfelder v. Sumner, 860 F.2d 328, 334 (9th Cir. 1988)(stating that episodic and casual observation of male prisoners by female guards is justified by security concerns); Grummett v. Rushen, 779 F.2d 491, 496 (9th Cir. 1985)(stating that "[t]o restrict female guards from ... occasional viewing of the inmates would necessitate a tremendous rearrangement of work schedules, and possibly produce a risk to both internal security needs and equal employment opportunities"). Moreover, verbal abuse or harassment does not amount to a constitutional violation. See Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997). Plaintiff has not presented a constitutional violation, nor has he alleged a substantial threat that he will suffer irreparable injury if an injunction is not granted.

### 4. Clothing, shoes, and linens

Plaintiff complains that, upon his arrival at WCC from Angola in August 2006, he was issued one pair of old boots, two sheets, and a jacket. Plaintiff opines that inmates should be provided extra sheets, brand new work boots, and winter clothes in addition to a jacket. Plaintiff complains that his "old" boots expose him

to a risk of Athlete's Foot. He does not allege that he ever contracted Athlete's Foot or any other fungal infection, only that used boots present that risk. Plaintiff complains that he does not have a spare set of sheets to use while the other sheets are being laundered. Finally, he complains that wearing a jacket indoors in the winter is uncomfortable. [Doc. #5, p.11-12]

While the Constitution does not permit inhumane prisons, it "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," Farmer v. Brennan, 511 U.S. at 832 (citing Hudson v. Palmer, 468 U.S. 517, 526-527 (1984)). Plaintiff has not alleged facts indicative of inhumane conditions of confinement. He does not allege that he was denied shoes or a jacket or sheets, he simply disagrees as to the quantity and type provided. Plaintiff has not alleged a substantial threat that he will suffer irreparable injury if an injunction is not granted. His complaint is frivolous.

### 5. Access to the Courts

Plaintiff complains that he is not provided enough time in law library and that he has been injured by this inadequacy. Plaintiff states that, in 2008, he filed a reconsideration of sentence, which

was denied on June 18, 2008. Plaintiff had thirty days to appeal the ruling to the Louisiana Second Circuit Court of Appeal but, because of insufficient time in the law library, Plaintiff missed the deadline.

An inmate's fundamental constitutional right of access to the courts requires prison authorities to assist inmates in preparation and filing of **meaningful legal papers** by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law. Bounds v. Smith, 430 U.S. 817 (1977). However, there is no abstract, freestanding right to a law library or legal assistance. An inmate must establish relevant actual injury, which cannot be shown by establishing that a prison's law library or legal assistance program is subpar in some theoretical sense. Lewis v. Casey, 518 U.S. 343, 351 (1996). The only access guaranteed is *meaningful* access, and the inmate must demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a non-frivolous legal claim. Lewis, at 351-353. Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines. Id. at 355.

According to documents submitted by Plaintiff, access to the law library is rotated among the units at WCC on a daily basis. [Doc. #6-2, p.4] For example, in the document provided by Plaintiff, Dogwood Unit's designated days for the law library were

13

March 3, 10, 13, 17, 24, 27, 31, 2009. Still, Plaintiff claims that his access to the law library was insufficient for him to file a timely appeal of the denial of his motion for reconsideration of sentence. However, Plaintiff had thirty days from the imposition of sentence to file a motion for reconsideration. [Doc. #6-2, p.5; La. C.Cr.P. art. 881.1] Plaintiff's motion was filed far more than thirty days after the imposition of sentence; in fact it was approximately *eighteen years* after his sentence began to run. [Doc. #6-2, p.5] While Plaintiff complains that the amount of time provided in the law library hindered his ability to timely appeal the judgment, it is clear that there is no amount of time that could have assisted Plaintiff in filing a non-frivolous legal claim. His motion for reconsideration was eighteen years late. He was not alleged the denial of meaningful access to the court, and his complaint is frivolous.

### 6. Retaliation

Plaintiff complains that he was retaliated against for attempting to exercise his right of access to the courts. According to Plaintiff, the chapel is located across from the law library. On at least one occasion where Plaintiff worked in the library until closing time, the night shift supervisor Captain Chatman instructed Plaintiff to sit in the chapel when the library closed rather than allowing Plaintiff to walk back to his unit. Plaintiff argues that he should be allowed to walk back to his unit

14

if the library is full or when the library closes. He states, "I have no other choice but to go to church when my mind is on my legal work. I feel it's retaliation." [Doc. #5, p.14]

Prison officials may not retaliate against an inmate for exercising his right of access to the courts. See <u>McDonald v. Steward</u>, 132 F.3d 225, 231 (5th Cir. 1998); <u>Woods v. Smith</u>, 60 F.3d 1161, 1164 (5th Cir. 1995). To state a claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." <u>Rosas v. Rodriguez</u>, 2006 WL 1877282, 1 (5th Cir. 2006)(citing <u>Jones v. Greninger</u>, 188 F.3d 322, 324-25 (5th Cir.1999)). Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." <u>Id.</u> citing <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997)(citations omitted). Plaintiff concludes that Capt. Chatman was retaliating against Plaintiff for using the law library. However, Plaintiff does not allege that the night shift supervisor would have allowed Plaintiff to walk back to his unit had he not been using the law library. Plaintiff has presented only a conclusory allegation of causation.

Moreover, the purpose of allowing inmate retaliation claims under 42 U.S.C. §1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. See <u>Morris v.</u>

15

Powell, 449 F.3d at 686 (citing <u>Crawford-El v. Britton</u>, 523 U.S. 574, 588 n.10 (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. <u>See</u> <u>Morris</u>, 449 F.3d at 686. Plaintiff was not deterred from using the law library or from exercising his right to access this Court, and he makes no allegations to that effect. Because Plaintiff has not alleged a retaliatory adverse act or causation, his complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that Plaintiff's complaint be DENIED and DISMISSED WITH PREJUDICE as frivolous and failing to state a claim upon which relief may be granted under 28 U.S.C. §1915(e)(2)(B)(I) and (ii).

Under the provisions of Title 28, Section 636(b)(1)©) of the United States Code and Federal Rule of Civil Procedure 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date**

16

of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this 7th day of _____, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE